[ECF No. 53]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **CHARLES RITTER,** General Administrator and Administrator *ad Prosequendum* of the Estate of ROCHELLE RITTER, deceased,<br><br>**Plaintiff,**<br><br>v.<br><br>**JACOB ADDY et al.,**<br><br>**Defendants.** | Civil No. 21-20408 (SAK) |

## OPINION

Presently before the Court is a Motion for Summary Judgment by Defendants Jacob Addy, Addy Brothers, LLC, and Amazon.com, Inc. (collectively, "Defendants") [ECF No. 53] as to all claims in Plaintiff's Amended Complaint. The Court received Plaintiff's opposition [ECF No. 56] and Defendants' reply [ECF No. 59]. Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of this Court to conduct all proceedings in the case. ECF No. 12. The Court exercises its discretion to decide the motion without oral argument.[1] *See* FED. R. CIV. P. 78; L. CIV. R. 78.1. For the reasons set forth herein, Defendants' motion is **GRANTED**.

I.  **FACTUAL BACKGROUND**[2]

This case arises out of a fatal hit and run accident involving a pedestrian and an unknown motor vehicle. *See* Defs.' Statement of Material Facts ("SoMF") ¶ 1, ECF No. 53-3. The accident

---

[1] Defendants requested oral argument within the instant motion and by way of a subsequently filed letter. The Court reserved ruling on the letter request at the time of filing. *See* ECF No. 58. Having found that oral argument is not necessary, the Court denies Defendants' request.

[2] The facts set forth herein are undisputed unless otherwise noted.

occurred at or around 2:00 a.m. on March 13, 2021, on Campus Drive in Burlington Township, New Jersey. *See id.*[3] There were no eyewitnesses to the accident. *See id.* ¶ 17 (citing Ex. G, Kochis Dep. 28:17–25).[4] The Burlington Township Police Department's ("BTPD") investigation of the accident concluded, in part, that the pedestrian/decedent, Rochelle Ritter, was highly intoxicated at the time of accident, crossed the roadway in an area where no crosswalk was present, and likely continued walking in the roadway "despite a sidewalk being readily available." *Id.* ¶ 2 (quoting Ex. A, at 2). The responding officer also concluded it was reasonable to believe the driver of the unknown vehicle "did not see [Ms. Ritter] at the time of the crash." *Id.* (quoting Ex. A, at 3).[5]

At the outset, investigating officers believed that the unknown vehicle was likely large due to the nature of the decedent's injuries. *See* Pl.'s Counterstatement of Material Facts ("CSoMF") ¶ II.10, ECF No. 56-1 (quoting Defs.' Ex. H, Cunningham Dep. 17:19–18:8). Surveillance video from a nearby iStorage facility on the corner of Campus Drive and Sunset Road captured what appeared to be a tractor-trailer hauling an Amazon trailer and passing the accident scene around

---

[3] Plaintiff disputes these foundational facts, in part, but fails to specifically identify which facts he disputes. *See* Pl.'s Resp. to Defs.' SoMF ¶ 1, ECF No. 56-1. For this reason, the Court deems these facts undisputed. *See* L. CIV. R. 56.1(a).

[4] Plaintiff disputes this fact, asserting that Defendant Addy was an eyewitness to the accident. *See* Pl.'s Resp. to Defs.' SoMF ¶ 17. Plaintiff, however, fails to cite to any materials in the record to support this assertion, as required by Local and Federal Rules. *See* FED. R. CIV. P. 56(c)(1)(A); L. CIV. R. 56.1(a). Instead, Plaintiff generically references his Counterstatement of Material Facts, without any citation to the paragraphs contained therein. For this reason alone, the Court considers this fact undisputed. Plaintiff disputes several other facts in a similar fashion. *See, e.g.*, Pl.'s Resp. to Defs.' SoMF ¶¶ 7–13, 17–21. The Court, therefore, deems all such facts undisputed.

[5] Plaintiff disputes the entirety of paragraph two of Defendants' SoMF as "mischaracterized." Pl.'s Resp. to Defs.' SoMF ¶ 2. The facts asserted in paragraph two, however, either directly quote or paraphrase portions of a "New Jersey Police Crash Investigation Report" concerning the subject accident. *See* Defs.' Ex. A, at 1–3. Plaintiff contends that the responding officer, Matt Kochis, "clarified the statements attributable him" in the report at deposition. Pl.'s Resp. to Defs.' SoMF ¶ 2 (quoting Defs.' Ex. G, Kochis Dep. 10:8–25, 25:7–17, 42:18–25, 43:12–18, and 34:21–35:8). Officer Kochis, however, does not recant a single statement attributable to him in the report at his deposition. If anything, the portions of his testimony to which Plaintiff refers simply add context to how Officer Kochis reached his conclusions.

2

the time the accident occurred. *See id.* ¶ II.11 (quoting Defs.' Ex. H, Cunningham Dep. 25:7–26:7). This led investigators to an Amazon facility located on Campus Drive. *See id.* Surveillance video from the Amazon facility's entrance captured a tractor-trailer arriving at the gate matching the one seen in the iStorage video. *See id.* ¶ II.12 (quoting Defs.' Ex. H, Cunningham Dep. 27:22–29:1). This video, along with other data recovered from the Amazon facility, identified Defendant Addy as the driver of the subject tractor-trailer. *See id.* ¶ II.14 (citing Ex. P-6).[6]

Defendant Addy was interviewed by police on March 14, 2021, a day after the accident, wherein he denied being the hit and run driver or otherwise having struck the decedent. *See* Defs.' SoMF ¶ 12 (citing Ex. A, at 7). That same day, Detective Brian Cunningham personally inspected the subject tractor. *See id.* ¶ 18 (citing Ex. H, at 31). To his surprise, no physical evidence linking the tractor to the impact with the decedent was found. *See* Defs.' Ex. H, Cunningham Dep. 36:19–37:6. Detective Cunningham also confirmed that the BTPD's Crime Scene Unit conducted an inspection of the Amazon trailer. *See id.* 43:17–20. No physical evidence linking the trailer to the impact was found, which Detective Cunningham characterized as "unusual." *See id.* 43:21–44:1; *see id.* 44:2–12 (noting that the "trailer went from [Addy's] truck into the Amazon warehouse and remained there"). Detective Cunningham testified that he reviewed video footage captured from various locations around the time of the accident, but that he did not find any videos showing the tractor or the Amazon trailer striking the decedent. *See* Defs.' SoMF ¶ 19 (citing Ex. H, at 40). The Burlington County Prosecutor's Office did not file charges against any of the defendants and closed its investigation into the accident in June 2021. *See id.* ¶ 22 (citing Ex. J).

---

[6] The Court acknowledges that the foregoing facts are partially contested by Defendants. *See* Defs.' Resp. to Pl.'s CSoMF ¶¶ II.10–II.12, II.14. In their current composition, however, the Court finds these facts to be uncontested.

3

II.     **PROCEDURAL HISTORY**

Plaintiff filed this action against Jacob Addy and Addy Brothers, LLC ("Addy Brothers") on September 27, 2021 in New Jersey state court.  On or about December 1, 2021, Plaintiff filed an Amended Complaint, adding Amazon.com, Inc. ("Amazon") as a defendant and asserting new claims against it.  Thereafter, Defendants removed the case to federal court.

Plaintiff's Amended Complaint asserts claims under the New Jersey Survivorship Act and Wrongful Death Act against Defendants, both individually and collectively. *See* Pl.'s Am. Comp., ECF No. 1-1.  Plaintiff's claims against Amazon are premised upon theories of vicarious liability and agency.  All claims, however, are predicated upon Plaintiff's core claim of negligence against Defendant Addy.  Plaintiff alleges that Defendant Addy negligently caused the death of Ms. Ritter.  More specifically, he alleges that Defendant Addy is the hit and run driver who struck and killed Ms. Ritter on March 13, 2021.

Fact discovery closed on September 29, 2023. ECF No. 39.  Expert discovery concluded on March 1, 2024. ECF No. 46.  At deposition, Defendant Addy testified that he was driving to the Amazon facility on Campus Drive in Burlington Township, New Jersey, in the early morning hours of March 13, 2021. *See* Defs.' Ex. E, Addy Dep. 43:3–24.  After making a right turn on to Campus Drive, Addy asserts that he was proceeding at about "25 to 30 miles per hour" until he saw his exit on the left. *Id.* 63:12–15.  Addy further testified that the road was clear and that he did not feel any sort of bump along his route. *See id.* 62:24–63:6.  Ultimately, he claims to have arrived at the Amazon facility between 2:08 and 2:10 a.m. *See id.* 64:19–23.

Plaintiff initially produced a Crash Analysis Report dated March 25, 2023, authored by his expert, Robert Clarke. *See* Defs.' Ex. N(1).  To prepare the report, Mr. Clarke reviewed, *inter alia*, several surveillance videos from the Chateau Apartment Complex. *See id.* at 11.  In these videos,

4

Ms. Ritter is observed walking southbound on Chateau Apartments Road, which runs parallel with Campus Drive. *See id.* at 11–12.  Of these, footage taken from the "Jardin Court Office 2" camera captures Ms. Ritter's last known whereabouts.  It also captures the Addy Brothers tractor-trailer entering Campus Drive and passing by the area of impact.  According to the video's timestamp, Ms. Ritter "turns left and exits [the] video" at about 2:00:50 a.m. *Id.* at 12.  Moments later, at about 2:00:56 a.m., the tractor-trailer is observed entering the video from Sunset Road as it turns right on Campus Drive, traveling northbound. *See id.*  The tractor-trailer then "enters the area of impact" at about 2:01:28 a.m., thirty-eight (38) seconds after Ms. Ritter exits the video. *Id.*  Based on his review of this video and other evidence, Mr. Clarke estimates that Ms. Ritter's walking speed was 4.17 feet per second ("fps"). *See id.* at 21.  When she exits the video, Mr. Clarke estimates she was about 142 feet from the area of impact. *See id.*  As such, Mr. Clarke opines Ms. Ritter would have reached the area of impact at the same time as the tractor-trailer. *See id.*  In sum, Mr. Clarke opines that the Addy Brothers tractor-trailer was the unknown vehicle that struck Ms. Ritter. *See id.*

Defendants' accident reconstruction expert, Robert T. Lynch, P.E., authored two expert reports dated July 27, 2023, and August 28, 2023, respectively.  In his first report, Mr. Lynch states that he reviewed surveillance video from multiple camera locations at the iStorage facility located at the corner of Sunset Road and Campus Drive. *See* Defs.' Ex. K(1), at 1.  "Camera 3," however, was the only camera that captured "the area of Campus Drive where the incident occurred." *Id.*  Mr. Lynch describes this footage as follows:

> The video captures 16 seconds of footage between 2:03:12 and 2:03:28 a.m. on March 13, 2021.  A box truck is observed traveling northbound on Campus Drive toward the incident location with a white SUV following behind the box truck.  At 2:03:18, as the box truck passes through the portion of Campus Drive shown in the upper righthand corner of the video, an object, highlighted by the headlights of the white SUV, is observed tumbling northbound behind the box truck.  The brake lights of the white SUV are activated shortly after the object is observed within the video, and the white SUV continues to slow as the object departs the field of view.

5

> The location of this object on the roadway, the general post-impact movement of this object, and where the object tumbled to (out of the field of view of the camera), are consistent with the object being Ms. Ritter.

*Id.* at 2. In a separate video clip from Camera 3, Mr. Lynch states the Addy Brothers tractor-trailer is observed passing the accident scene "nearly 5 minutes prior to the happening of the incident." *Id.* As such, Mr. Lynch concludes this footage establishes that the Addy Brothers tractor-trailer "was not involved in the subject incident." *Id.*

Mr. Lynch's second report was based upon his review of additional surveillance video from the Chateau Apartment Complex. *See* Defs.' Ex. K(2), at 1. In the report, Mr. Lynch primarily focuses on footage taken from the Jardin Court Office 2 camera—the same video footage reviewed by Plaintiff's expert, Robert Clarke—since it "showed the last known whereabouts of Ms. Ritter on Chateau Apartments Road prior to the subject incident." *Id.* The video captures Ms. Ritter from 1:59:32 to 2:01:14 a.m., at which point she becomes obscured by "the lack of contrast between her body and the background." *Id.* at 2. At her last known location at 2:01:14 a.m., Mr. Lynch contends Ms. Ritter was approximately 215 feet from Campus Drive. *See id.* At 2:01:28 a.m., fourteen (14) seconds later, the Addy Brothers tractor-trailer "traveled past the area of Campus Drive where the subject incident occurred." *Id.* Accordingly, Mr. Lynch concludes as follows:

> Ms. Ritter would have had to average a speed of 15.4 feet per second to cover that distance in that amount of time, just to get to Campus Drive, let alone the additional distance she had to travel to cross the southbound lane of Campus Drive and reach the point of impact within the northbound lane. This speed is consistent with that of a running speed, and not with the slow and staggered gait that the intoxicated Ms. Ritter exhibited at the time of the incident. Mr. Clarke, an expert hired on behalf of Ms. Ritter, calculated her speed while walking southbound on Chateau Apartments Road to be only 4 feet per second, less than one-third the speed she would have needed to have . . . reach[ed] Campus Drive when the Addy Brothers tractor-trailer reached the area. To a reasonable degree of engineering certainty, Ms. Ritter could not have reached the point of impact in the northbound lane of Campus Drive by the time the Addy Brothers tractor-trailer passed by.

*Id.* As a result, Mr. Lynch asserts that this video footage confirms the findings of his first report.

Thereafter, Plaintiff produced a Surveillance Camera Video Analysis authored by his video expert, Adam Cybanski, dated October 3, 2023. *See* Defs.' Ex. L.  Mr. Cybanski's report is based on his review of the surveillance video from the Chateau Apartment Complex. *See id.* ¶¶ 8–10. Notably, Mr. Cybanski contends that Ms. Ritter exited the video at 2:01:18 a.m., four (4) seconds later than Mr. Lynch contends. *See id.* ¶ 20.  Mr. Cybanski also contends that the Addy Brothers tractor-trailer "passes" at 2:01:25 a.m., three (3) seconds sooner than Mr. Lynch contends. *See id.* However, it is not clear whether this is intended to imply passing the area of impact.  Nevertheless, even without it, Mr. Cybanski's report narrows the window in which Ms. Ritter would have had to reach the area of impact to approximately ten (10) seconds.

Plaintiff then produced a supplemental report from Mr. Clarke, dated October 23, 2023,[7] which superseded his initial report.[8] *See* Defs.' Ex. N(2).  Mr. Clarke reviewed the reports authored by Mr. Lynch and Mr. Cybanski in preparing the report. *See id.* at 2.  He also incorporates portions of Mr. Cybanski's findings in the report. *See id.* at 12.  The opinions set forth therein, however, largely align with those of his initial report. *Compare id.*, *with* Defs.' Ex. N(1), at 21.  In particular, Mr. Clarke's final opinion—that the Addy Brothers tractor-trailer was the unknown vehicle that struck Ms. Ritter—remains unchanged. *See* Defs.' Ex. N(2), at 12.

Defendants now move for summary judgment as to all claims.  Specifically, Defendants argue that Amazon is entitled to summary judgment on Plaintiff's vicarious liability/agency claims because it neither employed, nor was under contract with, Mr. Addy or Addy Brothers LLC. *See* Defs.' Mem. Supp. Summ. J. at 4–7.  Defendants further argue summary judgment is warranted

---

[7] Plaintiff also produced a biomechanical/accident reconstruction report dated April 5, 2023, authored by Ethan R. Batterman, M.M.E., and Scott D. Batterman, Ph.D., P.E. *See* Defs.' Ex. O. This expert report, however, has no bearing on Defendants' motion, as it offers no opinions as to the identity of the unknown driver.  As such, the Court will exclude this report from its analysis.

[8] *See* Defs.' SoMF ¶ 28 n.2; *see also* Pl.'s Resp. to Defs.' SoMF ¶ 28.

7

with respect to all claims because Plaintiff has failed to produce any undisputed material evidence showing that the Addy Brothers tractor or the Amazon trailer struck the decedent. *See id.* at 7–11. Finally, Defendants argue that Plaintiff's experts' opinions either fail to create a genuine issue of material fact or are otherwise inadmissible. *See id.* at 11–15.

Plaintiff opposes the motion. First, Plaintiff argues that Amazon is not entitled to summary judgment because of the degree of control it exercised over Mr. Addy and Addy Brothers, LLC. *See* Pl.'s Opp'n at 8–13. Plaintiff further argues that there is adequate evidence to show that the Addy Brothers tractor or the Amazon trailer impacted and killed Ms. Ritter. *See id.* at 14–18. Plaintiff analogizes the instant matter to a police shooting, where the most critical witness is dead, stressing the importance of circumstantial evidence in such cases. *See id.* at 15. As for evidence, Plaintiff largely relies on the opinions of his experts, and the personal opinions of officers involved in the underlying investigation who believed Addy was the hit and run driver. *See id.* at 16–17. Plaintiff asserts the evidence is adequate to prove its case, "not only by the preponderance of the evidence, but beyond any reasonable doubt." *Id.* at 17. As to Defendants' objection to his experts' opinions, Plaintiff devotes two sentences, labeling it unfounded. *See id.* at 19.

In response, Defendants characterize Plaintiff's position on its vicarious liability/agency claims as an effort to manufacture an issue of material fact. *See* Defs.' Reply at 6–9. Defendants assert Plaintiff is still unable to point to a single piece of undisputed material evidence linking the Addy Brothers tractor or the Amazon trailer to the accident. *See id.* at 9–10. Defendants also assert the opinions of their expert, Mr. Lynch, remain undisputed, as Plaintiff has failed to rebut them. *See id.* at 10. In sum, they argue there is no genuine dispute of material facts in the case and that Plaintiff's claims lack the requisite evidentiary support, entitling Defendants to summary judgment with respect to all claims. *See id.* at 11–12.

### III.     LEGAL STANDARD

Summary judgment is appropriate if, drawing all reasonable inferences in the nonmoving party's favor, there exists "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).  "[T]he substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248.  Only disputes over facts that could affect the outcome of the case under the governing law will properly preclude the entry of summary judgment.  Disputes that are irrelevant or unnecessary will not be considered. *See id.*  A dispute over a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  In other words, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in original).

The moving party bears the initial burden of demonstrating the basis for its motion and the absence of a genuine dispute as to any material fact—regardless of which party ultimately bears the burden of persuasion at trial. *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 527 (D.N.J. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To satisfy this burden, the moving party may produce evidence showing the absence of a genuine issue of material fact, or by showing there is inadequate evidence in support of the nonmoving party's case. *See Celotex*, 477 U.S. at 325.  Upon a sufficient showing, the burden then shifts to the nonmoving party to demonstrate otherwise. *See Messa*, 122 F. Supp. 2d at 527 (citations omitted) ("In such situations, 'the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'").

To withstand a properly supported motion for summary judgment, the nonmoving party must "go beyond the pleadings" and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (citation omitted). A party resisting the motion "cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985) (citation omitted); *see, e.g.*, *Messa*, 122 F. Supp. 2d at 528 (citation omitted) ("[I]ts opponent must do more than simply show that there is some metaphysical doubt as to material facts."). Thus, if "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250–51 (internal citations omitted).

## IV.     DISCUSSION

Defendants argue they are entitled to summary judgment because there exists no genuine dispute of material facts in the case and Plaintiff cannot point to any material evidence connecting Mr. Addy, the Addy Brothers tractor, or the Amazon trailer to the accident. Defendants maintain that the record demonstrates the absence of any physical evidence, eyewitnesses, or any statements or testimony, expert or otherwise, making such a connection. The Court agrees. The Court finds Defendants are entitled to summary judgment on all claims because there is inadequate evidence in support of Plaintiff's negligence claim against Addy, upon which all claims are predicated. Accordingly, the Court's analysis necessarily begins and ends with this claim.

### A.  Common Law Negligence

To sustain a claim for negligence, a plaintiff must prove: (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages. *See Weinberg v. Dinger*, 524 A.2d 366, 373 (N.J. 1987). The failure to adduce evidence supporting any one of these elements demands the entry of summary judgment against Plaintiff since his claims are predicated upon a showing of liability as to Mr. Addy. *See Celotex*, 477 U.S. at 322 (finding the entry of summary judgment is

warranted against a party who, "after adequate time for discovery and upon motion, . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"); *see also Conde v. City of Atlantic City*, 293 F. Supp. 3d 493, 508 (D.N.J. 2017) (granting summary judgment as to wrongful death and survivorship claims "because there is no underlying" misconduct by the defendants).

Under New Jersey law, proximate cause is "that combination of 'logic, common sense, justice, policy and precedent' that fixes a point in a chain of events, some foreseeable and some unforeseeable, beyond which the law will bar recovery." *Williamson v. Waldman*, 696 A.2d 14, 20 (N.J. 1997) (citation omitted). In determining the existence of proximate cause, a court must first inquire whether the defendant's conduct was a cause in fact of the plaintiff's loss. *See Kulas v. Pub. Serv. Elec. & Gas. Co.*, 196 A.2d 769, 772 (N.J. 1964) (citation omitted). "Causation in fact depends on whether an act or omission played a material part in bringing about an event." *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 73 (3d Cir. 1996).

"It is axiomatic that 'the mere showing of an accident causing injuries is not sufficient from which to infer negligence. Negligence is a fact which must be proved; it will not be presumed.'" *Id.* at 74 (quoting *Hansen v. Eagle-Pitcher Lead Co.*, 84 A.2d 281, 284 (N.J. 1951)). A plaintiff must introduce evidence sufficient to provide a reasonable basis for the conclusion that it was more likely than not that the negligent conduct of the defendant was a cause in fact of the plaintiff's injury. *See id.* "Circumstantial evidence when used to reason deductively in civil cases is defined as a 'preponderance of probabilities.'" *Id.* (citations omitted). "[T]he evidence must be such as to justify an inference of probability as distinguished from the mere possibility of negligence on the part of the defendant." *Hansen*, 84 A.2d at 285 (citations omitted); *see Kulas*, 196 A.2d at 773

11

(citation omitted) ("[Causation] may rest upon legitimate inference, so long as the proof will justify a reasonable and logical inference as distinguished from mere speculation.").

### B. Analysis

Here, the critical issue for Plaintiff is that he is unable to show that Defendant Addy in fact caused Ms. Ritter's death. Plaintiff has not provided any direct evidence connecting Addy, the Addy Brothers tractor, or the Amazon trailer to the accident or the impact with the decedent. Instead, Plaintiff relies solely upon circumstantial proof of causation. For example, Plaintiff points to the following: Addy's extensive work schedule and lack of rest, purportedly to establish he was suffering from fatigue, *see* Pl.'s CSoMF ¶¶ II.1, II.2; that Addy had been to the Amazon facility only once before and was relying on his cell phone for route guidance, seemingly to show that he was distracted, *see id.* ¶ II.3; and Addy's conduct upon his arrival to the Amazon facility, at which he exited his vehicle and looked at his front bumper, to show he was "inspecting" his vehicle for potential evidence or damage resulting from the accident. *See id.* ¶ II.14. Even though the Court must draw all legitimate inferences in Plaintiff's favor, the foregoing examples are not appropriate inferences to be drawn. *See Fedorczyk*, 82 F.3d at 75 (citation omitted) ("The possibility of the existence of an event does not tend to prove its probability."). More significantly, whether or not Addy was distracted or fatigued has no bearing on the issue of causation. Nor does the "fact" that he was "inspecting" the front of his vehicle, without more.

Plaintiff's expert evidence fares no better. Insofar as Plaintiff's experts' reports rely upon the theory that Ms. Ritter must have immediately exited the videoframe and directly proceeded to the area of impact on Campus Drive, his experts' conclusions amount to no more than speculation. The fact of the matter is that it is not known when the accident occurred or where Ms. Ritter was headed to when she exits the video. What is known is that the accident was first reported to police

at 2:13 a.m. *See* Defs.' Ex. A, at 1; *see also* Defs.' Ex. F., Neill Dep. 20:7–21:6.  In other words, nothing in the record shows, let alone suggests, that Ms. Ritter was struck by a vehicle or in the area of impact at the time the Addy Brothers tractor-trailer passes it.  Consequently, Mr. Clarke's ultimate opinion in his supplemental report—that the Addy Brothers tractor-trailer was the vehicle that struck Ms. Ritter—is not based on any direct or circumstantial evidence of when she was hit or where she was at *that* time. *See* Defs.' Ex. N(2), at 12.  It is speculative to conclude that the Addy Brothers tractor-trailer was the vehicle that hit Ms. Ritter when no evidence in the record shows where she was when the tractor-trailer passes the area of impact.  It is also speculative to infer that Ms. Ritter was en route to the area of impact as she exits the video since no evidence establishes her location thereafter, until the accident is first reported.[9]  Since Mr. Clarke's opinion "is based on pure speculation, rather than a reasonable inference," it is without foundation and, thus, inadmissible. *Fedorczyk*, 82 F.3d at 75; *see id.* (finding the plaintiff's expert's opinion on the issue of causation in a slip and fall action was "not based on any direct or circumstantial evidence of where [the plaintiff] was standing when she fell," and therefore, amounted to pure speculation, rendering the opinion inadmissible).

      Mr. Cybanski's video analysis report offers no opinion as to the issue of causation.  Instead, his findings were reviewed and incorporated by Mr. Clarke in authoring his supplemental report.  Having already found Mr. Clarke's opinion on the issue of causation to be legally inadmissible,

---

[9] Plaintiff's expert's speculations are also inconsistent with Mr. Lynch's expert opinion in his first report—that the Addy Brothers tractor-trailer was not involved in the accident because it was captured on video passing the scene of the accident some five (5) minutes prior to it occurring. *See* Defs.' Ex. K(1), at 2.  This opinion is not refuted by any of Plaintiff's experts.  Notably, Mr. Clarke reviewed and analyzed Mr. Lynch's first report in connection with his supplemental report. *See* Defs.' Ex. N(2), at 2.  Nevertheless, Mr. Clarke's supplemental report is entirely silent as to this particular opinion. *See id.* at 6 (discussing other opinions and aspects of Mr. Lynch's first report); *see also id.* at 7–12.

the Court notes Plaintiff is without any other expert proof on this issue. More critically, however, is that Plaintiff offers no evidence—expert or otherwise—that tends to prove the decedent's death was caused by Defendant Addy, or that the decedent was even struck by the Addy Brothers tractor or the Amazon trailer. Nor does he offer any circumstantial proof sufficient to draw a reasonable inference of causation. Without such proof, Plaintiff fails to establish an element that is essential to each and every one of his claims. Therefore, all Defendants are entitled to summary judgment as matter of law on Plaintiff's claims against them.

In brief, Ms. Ritter's death was a tragedy. Plaintiff was afforded ample time for discovery but is still unable to sustain his claims against Defendants. "The fact that there is no explanation for an accident does not, by itself, entitle a plaintiff to invoke" an exception or shift the burden. *Cockerline v. Menendez*, 988 A.2d 575, 584 (N.J. Super. Ct. App. Div. 2010) (citation omitted). "Rather, a plaintiff has the burden of producing evidence that reduces the likelihood of other causes so 'that the greater probability [of fault] lies at defendant's door.'" *Id.* (alteration in original). Plaintiff has failed to produce any such evidence here. Accordingly, the Court grants Defendants' Motion for Summary Judgment in its entirety.

## V.     CONCLUSION

For all the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**. An appropriate Order shall follow.

s/ Sharon A. King  
SHARON A. KING  
United States Magistrate Judge